CASE 54—PETITION EQUITY—JANUARY 31.

# Jackson vs. Payne's executors.

### APPEAL FROM FAYETTE CIRCUIT COURT.

1. The general rule is, that parol evidence of the intention of a testator is inadmissible for the purpose of explaining, contradicting, or adding to the contents of a will; but that its language must be interpreted according to its proper signification, or with as near an approach thereto as the body of the instrument, and the state of the circumstances existing at the time of its execution, will admit of.

2. In regard to mistakes in wills, the doctrine is, that courts of equity have jurisdiction to correct them when they are apparent upon the face of the will. But the mistake must be apparent on the face of the will, or must be one that may be made out by a proper construction of its terms, otherwise there can be no relief. Parol evidence, or evidence *dehors* the will, is not admissible to vary or control the terms of the will, although it is admissible to remove a latent ambiguity. (1 *Story Eq. Jur.*, sec. 179, 183; 1 *Johns. Ch.*, 231; 4 *Vesey*, 45.)

3. The residuary clause of a will is as follows: "It shall be *equally divided* between my son Remus, and my daughters Eliza Estill, Anna Jackson, and Lydia Taylor, subject to the limitations, conditions, and trusts hereinafter provided." The will also contains this clause: "I have made advances to those four children, which advances I deem about equal." There being nothing in the will which indicates the existence of a mistake, or an intention to make any other provision to remedy an inequality alleged by one of the legatees to exist, and which it is alleged the testator intended to remedy. *Held*—That the express terms of the will cannot be contradicted nor explained by parol testimony, and that a court of equity has no power to alter or modify it.

GEO. ROBERTSON, for appellant, cited 1 *Story's Equity*, secs. 180–1–2; 3 *Vesey*, 106; .*Ib.*, 309; *Ib.*, 255–6; 2 *Brown's Chan. Rep.*, 18.

J. B. BECK, for appellees, cited 18 *B. Mon.*, 260; *Civil Code*, secs. 125, 126, 128, 129, 130, 690, 691; *Rev. Stat.*, sec. 3, chap. 24, *p.* 279.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

This action was brought by the executors of Henry C. Payne against John Jackson, on a note for $4,100 75, which he executed to them, for the last installment of the purchase money of a tract of land, which they, as executors aforesaid, had sold to him.

The defendant alleged in his answer that the will of Henry C. Payne, which he exhibited, "contemplated and intended an

equal distribution of his estate among all his children, but through inadvertence and mistake in estimates of amounts advanced, his will, if literally carried out, would leave defendant's wife, who is one of his children, with less than any of his other children to the amount of at least $7,500."

That the testator intended that the four residuary legatees should be made equal out of the fund, which was to be distributed between them, and that the inequality which would result to the prejudice of his wife, from an equal distribution of that fund among its recipients, arose from the following circumstances: "The testator advised defendant to buy a tract of land from James A. Grinstead, and promised to help him by making the first payment. Encouraged by that promise, defendant made the purchase, and in fulfillment of the promise, the testator signed the bond for the first installment of $4,500, promising and 'intending to pay it; but did not sign the bond for either of the other installments; and testator died before the bond was paid, and defendant had to pay it."

2. The testator, just before his death, bought a lot of cattle which he intended for defendant; but he died before the cattle were fit for sale, and they were, after his death, sold by the executors as assets for nearly $4,500.

3. The testator intended to give a negro woman to defendant's wife, which was also prevented by his sudden death.

"The defendant, therefore, says, that in estimating advances, the testator considered the said cattle, the said bond for the first installment of the purchase money to Grinstead, and the said negro woman, as so much advanced to defendant's wife; and had he lived long enough, he would have paid said bond, and delivered to defendant's wife the said negro woman and the money arising from the sale of said cattle."

The defendant contended that he had a right to have the residuary fund so distributed as to make the legatees to whom it was bequeathed all equal, taking into the estimate the advancements which each of them had received from the testator in his lifetime. And he insisted, that by so doing his wife would be entitled to a sum more than sufficient to pay the amount of the note on which he was sued.

A demurrer to the defendant's answer was sustained by the court below, and a judgment rendered against him for the amount of the note; and from that judgment he has appealed to this court.

The residuary clause in the will is in the following language: " It shall be *equally divided* between my son Remus, and my daughters Eliza Estill, Anna Jackson, and Lydia Taylor, subject to the limitations, conditions, and trusts hereinafter provided."

The part of the will which is relied upon to show that the testator intended that the four legatees above mentioned should all be made equal, reads as follows, viz : " I have made advances to those four children, which advances I deem about equal."

For the appellant, it is contended that it is competent to show by extrinsic testimony that the testator was mistaken in supposing that his four children, who are his four residuary legatees, had received from him advancements to an equal amount ; and that as his intention to make them all equal is clearly evinced by the foregoing declaration that they had been equally advanced, that intention should be carried into effect by equalizing them out of the residuary fund.

It is contended, on the other side, that as the testator has expressly directed the residuary fund to be equally divided between the four legatees, that the court has no power to change that disposition of it, and give to one of them a larger part thereof than is given to the others ; and that the statement made by the testator that the advances which he had made to them were about equal, cannot be contradicted by parol testimony.

All the statements contained in the answer are, upon the demurrer, to be regarded as true. Still it is apparent that nearly all of them, if denied, have to be established by evidence *aliunde*. In testing the sufficiency of the answer, therefore, the question to be determined is, how far is parol evidence admissible to control or modify the provisions of a will by showing that the testator was laboring under a mistake in relation to

certain facts, the existence of which was assumed by him when he executed his will.

The general rule is, that parol evidence of the intention of a testator is inadmissible for the purpose of explaining, contradicting, or adding to the contents of a will; but that its language must be interpreted according to its proper signification, or with as near an approach thereto as the body of the instrument, and the state of the circumstances existing at the time of its execution, will admit of.

In regard to mistakes in wills, the doctrine is, that courts of equity have jurisdiction to correct them when they are apparent upon the face of the will. But the mistake must be apparent on the face of the will, or must be one that may be made out by a proper construction of its terms, otherwise there can be no relief. Parol evidence, or evidence *dehors* the will, is not admissible to vary or control the terms of the will, although it is admissible to remove a latent ambiguity. (1 *Story Eq. Jur.*, sec. 179, 183 ; *Mann vs. Mann*, 1 *Johns. Chan.*, 231 ; *Mellish vs. Mellish*, 4 *Vesey*, 45.)

It is, however, contended that where the testator has made a mistake in the computation of a legacy, the mistake will be corrected by a court of equity ; and it is insisted that the mistake in this case was one of computation, and may, therefore, be rectified in equity. In support of this doctrine, we have been referred to the case of *Milner vs. Milner*, (1 *Vesey, sr.*, 106.)

In that case the will contained the following bequest : " I give to my daughter Mary £3,500, which, with £6,000 she is entitled to by my marriage settlement, and £500 from her father-in-law, make up £10,000, which is the sum I design she shall have for her fortune."

It happened that she was entitled only to £5,000 instead of £6,000 by the marriage settlement, and she exhibited her bill against the executor, to compel him to pay the additional one thousand pounds.

The court decided that it was evident the testator intended she should have £10,000, and that if by a mistake in the computation of the items, which made up that amount, he had given her more than was necessary for that purpose, she would

only have been entitled to the £10,000; and that, as in consequence of the mistake, the bequest named did not make that sum, she was entitled to the £1,000 which she claimed, to make up the £10,000 intended for her fortune.

In that case the testator's intention to give to his daughter a sufficient sum, in addition to the other sums named, to make the sum of £10,000, was clearly expressed. The will itself contained a reference to all the items that entered into the computation, and furnished the means of ascertaining with certainty the existence and the extent of the mistake. No parol evidence was required for the purpose, but the mistake was demonstrated by an inspection of the marriage settlement referred to by the testator.

In this case, however, there is no mistake apparent on the face of the will, nor does it furnish any means by which the existence of a mistake on the part of the testator can be demonstrated. To establish the mistake relied upon, it would be necessary to prove by parol testimony, not only the amount of advancements which had been made to the wife of the defendant, and those which had been made to the other residuary legatees, but also those which the testator contemplated making to the defendant's wife, which he had been prevented from making by his death. But parol testimony is wholly inadmissible for such a purpose.

The effect of such testimony would be to contradict the statement made by the testator; but it would not demonstrate that he labored under a mistake when he made it with regard to the advancements which he had made to either of the legatees. It might show that the statement is incorrect, if it means that the amount advanced to each of them was equal to that which had been advanced to each of the others. That, however, is not the statement which is made by the testator. He says: "The advances I have made to those four children I *deem about* equal." Now, the considerations which might have influenced him to deem the advancements *about* equal, although they were not so, but, on the contrary, were very unequal, may not be susceptible of explanation, being confined to his own mind; yet they may have been perfectly satisfactory to him. Other matters,

besides the mere value of the property advanced, may have been taken into the estimate, and have induced him to *deem* the advancements he had made to the four legatees to be *about* equal, although actually unequal in amount.

If, however, parol testimony were admissible to prove that the testator labored under a mistake with respect to the advancements he had made to each of the four legatees, still, that would not demonstrate that he intended, if the advancements were unequal, to make the legatees equal out of the residuary fund. That fund he directs expressly to be *equally divided* between them. There is nothing contained in the will which indicates an intention that they shall be equalized out of that fund. To effect that object, the court would have to make a new will for the testator, and that without a knowledge of his intention on the subject; for it does not appear what he would have done, if there had been no mistake. Indeed, we do not suppose that he was ignorant of the value of the advancements he had made to each of the legatees, nor would proof of the inequality of such advancements conclusively show that he labored under a mistake upon the subject.

According, however, to the statements in the answer, the inequality in the advancements resulted from the unexpected death of the testator, who had it in contemplation to make additional advancements to the defendant's wife, but was prevented from doing it by his death.

This view of the matter, by showing that there was no mistake, removes the only ground upon which even a plausible argument can be constructed in favor of the admission of parol testimony; for according to this view, the omission by the testator to equalize the four residuary legatees out of the residuary fund, did not result from any mistake on his part, as to the amount of advancements which he had actually made, but was the consequence of his intention to make additional advancements, which intention was defeated by his death. Admitting, therefore, that such an intention existed, and that its accomplishment was defeated by the death of the testator, it is obvious that the legatee is not entitled to any relief on that ground.

The express declaration by the testator that he deemed the advances he had made to the four residuary legatees to be about equal, and his positive directions that the residuary fund should be equally divided between them, cannot be contradicted nor explained by parol testimony; and as there is nothing in the will which either indicates the existence of a mistake, or an intention to make any other provision in favor of the defendant's wife than that which is clearly expressed, a court of equity has no power to alter or modify it, in any particular.

The other matter relied upon by the defendant in his answer was properly disregarded by the court. That part of the testator's estate to which the defendant's wife is entitled under the will, is, by the provisions of the will to pass into the hands of a trustee for the sole and separate use of the wife during her life, and at her death goes to her children. It is manifest, therefore, that the husband cannot have it applied to the payment of the debt which he owes to the executors. The demurrer to the answer was, therefore, properly sustained.

Wherefore, the judgment is affirmed.