AT THE

## JANUARY TERM 1863, AT BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, CHIEF JUSTICE.
Hon. THERON METCALF,
Hon. PLINY MERRICK,
Hon. EBENEZER R. HOAR,  } JUSTICES.
Hon. REUBEN A. CHAPMAN,

## ESSEX COUNTY.

### GEORGE T. LANCASTER & others *vs.* GEORGE F. CHOATE & others.

This court has jurisdiction to revise and correct the decisions of a judge of insolvency as to matters of fact; and in the exercise of this jurisdiction is not limited to the evidence which was before him, but may allow the parties to introduce other evidence.

One who has entered a firm as a special partner, without complying with the provisions of the statute respecting limited partnerships, is liable to be included, as a general partner in the firm, in proceedings in insolvency.

BILL IN EQUITY alleging that on the 4th of November 1861, Bucknam, Rayner & Co. were and still are creditors of the firm of Woodman & Lancaster, consisting of Broadstreet P. Woodman, George T. Lancaster and Warner R. Whittier; that on that day Lancaster applied by petition to the judge of insolvency, setting forth that said firm were insolvent, and praying that a warrant might be issued for taking possession of their

joint and separate estates, according to law; that afterwards on the same day Woodman applied by petition to the same judge, setting forth that a limited partnership existed between himself, Lancaster and Whittier, of which Whittier was a special partner, and that said firm was insolvent, and praying that a warrant might be issued for taking possession of the joint and separate estate of himself and Lancaster; that notice was duly issued on each of these petitions, and a hearing had upon both of them at the same time, at which it was made to appear, and is true, that on the 29th of March 1856 a limited partnership was formed, of which Woodman and Lancaster were the general partners and Whittier was the special partner, to continue from the 1st of April 1856 to the 31st of March 1859; that on the 1st of April 1859 said partners renewed their partnership for three years, and signed a notice thereof, stating that Whittier remained a special partner as theretofore; that they continued to do business as partners, but did not comply with the statutes respecting limited partnerships, after the renewal; that at the hearing before the judge of insolvency, Lancaster and Bucknam, Rayner & Co. objected to the granting of the petition of Woodman, and showed that the partnership was a general one, by reason of the failure to comply with the statutes, as aforesaid, and prayed the judge to issue a warrant in conformity with the petition of Lancaster, but that the judge declined to do so, and dismissed the said petition, and, after the petition of Woodman had been amended by striking therefrom all that related to Whittier, a warrant was issued against the joint and separate estates of Woodman and Lancaster only, and delivered to a messenger, who has taken possession of their property accordingly. The prayer was, that these proceedings might be annulled, and the judge, petitioner and messenger enjoined from any further proceedings under the petition of Woodman, and that the judge might be ordered to issue a warrant upon the petition of Lancaster, and for other and further relief.

The various defendants filed answers, and testimony was taken and reported to the court by a commissioner, upon which three questions of law were discussed: 1. Whether this court

can issue a writ of *mandamus*, as prayed for. 2. If it can, will it receive and consider any evidence other than that which was presented to the judge of insolvency. 3. Whether Whittier, either by agreement or operation of law, was a general partner, so as necessarily to be included in proceedings in insolvency instituted by one of the firm. The facts in evidence, so far as material, are stated in the opinion.

*B. F. Brooks*, for the plaintiffs, contended that, upon the evidence, the statutes respecting limited partnerships were not complied with, at the outset, in 1856 ; and that, if they were, the parties failed to record and publish the certificate of renewal, in April 1859, and thus became general partners. Rev. Sts. *c.* 34, § 6. They were general partners not only as to third persons, but *inter sese.* §§ 4, 11, 13. Lancaster therefore had a right to put them all into insolvency. Even if he had not, any creditor had a right to become a party to the petition, and prosecute it. *Foster* v. *Goulding*, 9 Gray, 50. The court in this proceeding will revise the facts and receive testimony not offered before the court of insolvency. *Barnard* v. *Eaton*, 2 Cush. 301. *Harlow* v. *Tufts*, 4 Cush. 451. *Thompson* v. *Thompson*, Ib. 133. *McDaniel* v. *King*, 5 Cush. 472. There was evidence enough before the judge of insolvency to require him to issue a warrant against the three as general partners. This petition is not multifarious. *Cheshire Iron Works* v. *Gay*, 3 Gray, 531, 534.

*S. B. Ives, Jr. & E. Avery*, for the defendants. Bucknam, Rayner & Co. were not parties to the proceedings in the court of insolvency, or attaching creditors, and they do not allege any fact which entitles them to be heard as parties to this bill. Lancaster is the only person rightfully before the court as plaintiff. *Penniman, petitioner*, 5 Law Reporter, N. S. 28. *Massachusetts Iron Co.* v. *Hooper*, 7 Cush. 183. As regards Whittier, Lancaster's petition was *in invitum*, and it was necessary to prove the allegations. *Stearns* v. *Kellogg*, 1 Cush. 449. *Jordan, petitioner*, 9 Met. 292. It is not claimed that the parties were by agreement partners *inter sese.* One may be liable as a partner to third persons, and yet not be liable to be included in proceedings in insolvency commenced by one of the actual partners. *Hanson* v

*Paige*, 3 Gray, 244.   As to all persons dealing with the firm, the special partner is to be deemed a general partner, if the provisions of the statute have not been complied with ; but *inter sese* the intent governs.   *Hazard* v. *Hazard,* 1 Story, 371.   In the exercise of a judicial duty, the judge dismissed the petition of Lancaster.   The real object of the bill is, to obtain a writ of *mandamus ;* to compel the judge of insolvency to find that the parties were general partners, contrary to his own opinion.

This court has no authority to issue a writ of *mandamus* in such a case.   Gen. Sts. *c.* 112, § 3 ; *c.* 118, § 16.   *Smith* v. *Mayor, &c. of Boston,* 1 Gray, 72.   *Carpenter* v. *County Commissioners,* 21 Pick. 258.   *Strong, petitioner,* 20 Pick. 495.   *Morse, petitioner,* 18 Pick. 443, and cases cited.   The Gen. Sts. *c.* 118, § 16, give no power except in equity ; and this does not include the power to issue a writ of *mandamus,* which is a common law writ.   And Gen. Sts. *c.* 112, § 3, only refer to ministerial acts.   *Cushing* v. *Arnold,* 9 Met. 27.   *Thayer* v. *Smith,* Ib. 469.   *Hanson* v. *Paige,* 3 Gray, 239.   *Woodman* v. *Saltonstall,* 7 Cush. 181.   *Lexington* v. *Mulliken,* 7 Gray, 280.   *Partridge* v. *Hannum,* 2 Met. 572.

The case should be determined on the evidence introduced before the judge of insolvency.   *Kimball* v. *Morris,* 2 Met. 573. The jurisdiction of this court is not appellate, but for the purpose of correcting errors.   An appeal vacates the decree or judgment appealed from, and opens the whole case anew.   But a proceeding for the purpose of correcting errors raises only the question whether the decree or judgment was actually erroneous.   In revising the proceedings of the judge of insolvency, this court will not decide that he committed an error in not considering evidence which he did not hear.   The petitioners put in all the evidence which they thought expedient, and it failed to prove their case.   Shall they now come into this court, and be allowed to show that they might have proved more ?   Are they " aggrieved," because they think they can improve their case upon a new hearing ?   If the contrary rule is established, hearings in courts of insolvency will become merely *pro forma ;* and the entire jurisdiction of controverted questions will be transferred to this court.

45 *

It is not pretended that Whittier agreed to become a general partner. · The only question, on this branch of the case, is, whether he became such by operation of law. A partnership *inter sese* is created only by a voluntary contract. Colly. Part. § 3. 3 Kent Com. (6th ed.) 24. *Hazard* v. *Hazard, ubi supra.* Partners are bound by the terms of their contract. 2 Greenl. Ev. § 481, and cases cited. *Hesketh* v. *Blanchard,* 4 East, 144. *Livingston* v. *Roosevelt,* 4 Johns. 265. *Waugh* v. *Carver,* 2 H. Bl. 235, and 1 Smith's Lead. Cas. 491. In order to entitle the plaintiffs to proceed on the original petition of Lancaster, they must establish an actual general partnership, which included Whittier; and it is not enough that Whittier may be liable to the creditors of the firm by operation of law. The agreement between the parties was, at most, only for a limited partnership. Lancaster was a party to this agreement, and is bound by it. And if there was no agreement, even for a limited partnership, (which the defendants contend was the fact,) the plaintiffs cannot avail themselves of declarations or admissions of Whittier that he was a special partner.

CHAPMAN, J. The special jurisdiction of this court as a court of chancery, in cases arising under the insolvency laws, is described in *St.* 1838, *c.* 163, § 18; *St.* 1851, *c.* 327, § 16, applying it to insolvent corporations; and Gen. Sts. *c.* 118, § 16, which change the phraseology, but do not change the substance of the former provisions. It is not to be regarded as an appellate jurisdiction; for such a construction of the law would be contrary to the manifest intent of the legislature, and the existence of such a jurisdiction would create needless delays and embarrassments in the operation of the system. Where a right of appeal is given, as in the case of a creditor whose claim is disallowed, it is given in unequivocal terms, and the appeal is to the superior court. *St.* 1838, *c.* 163, § 4. Yet in describing the jurisdiction of this court, and also the process by which parties may apply to the court, and its course of proceeding thereon, the statute employs very comprehensive terms. It is " a general superintendence and jurisdiction, as a court of chancery, of all cases arising under this act," and " in all cases which are not

herein otherwise specially provided for, upon the bill, petition or other proper process of any party aggrieved by any proceedings under this act, to hear and determine the case as a court of chancery, and to make such order or decree therein as law and justice shall require." *St.* 1838, *c.* 163, § 18. This language is broad enough to include all questions of fact as well as of law, and the forms of proceeding are free from technical restraints.

The reason for making this provision so extensive is to be found in the character of the insolvent laws. They invest courts of inferior jurisdiction, and for a time invested masters in chancery, with an extensive power over the person as well as the whole estate and business of an individual alleged to be insolvent, and interfere with the rights of his creditors, and of persons who have contracted with him. One important object which is expressed by the statute in respect to the jurisdiction of this court is, to establish and maintain a regular and uniform course of proceedings in all the different courts. Another principle, which is so important that the legislature cannot be supposed to have overlooked it, is the right of trial by jury. There was not and could not well be a jury trial established in the courts of insolvency. The delays, perplexities and expense incident to it would have destroyed the value of the system. The jurisdiction conferred on this court was manifestly intended to meet every exigency, whether foreseen or unforeseen. If the inferior tribunal should err as to the law or the facts, any party aggrieved was authorized to apply to this court, by a process adapted to the nature of his case, and might obtain an appropriate redress. His application does not bring the whole case before this court, but merely the point in respect to which he is aggrieved ; and when that matter is corrected, everything else remains unchanged in that court. His right to have a decision of that court revised here is not given as a matter of course; but he must first satisfy the court that he has been aggrieved. His right to a trial by jury is not a matter of course; but when a suitable case is presented, this court may frame issues to be tried by a jury, as in other cases in chancery. And if the party has

been guilty of laches, or if no reasonable cause is shown for interfering with the proceedings, he cannot be permitted to embarrass them by transferring the litigation to this court at his pleasure. In adopting the new and untried system, the legislature seem to have deemed it important to confer on this court a large discretionary power.

The court has had frequent occasion to consider the extent of its jurisdiction. In *Partridge* v. *Hannum*, 2 Met. 569, in speaking of the clause in *St.* 1838, *c.* 163, § 5, which makes the assignment conclusive evidence of the authority of an assignee to bring suits, Dewey, J. remarks that in a proper case, with proper parties, this court would have full power to arrest the proceedings, if there were an illegal and unauthorized appointment of one as assignee, and to order an injunction as to any suits at law or other proceedings by such assignee. In *Kimball* v. *Morris*, Ib. 573, the right of the judge of probate to issue a warrant to a messenger to take possession of all the debtor's property without notice to him is discussed; and in such case it is admitted that he has a remedy in this court, if aggrieved. A *mandamus* was issued to the judge in that case, requiring him to issue a warrant for the examination of the debtor. In *Claflin* v. *Beach*, 4 Met. 392, an injunction against further proceedings was granted on the petition of several attaching creditors, on the ground that the debtor had left the Commonwealth before the proceedings were commenced. This decision involved a question of fact. If the decision of the judge of probate that the debtor did reside in his county had been held conclusive as to that fact, there would have been no remedy here, however erroneous his decision might have been. In *Davis* v. *Newton*, 6 Met. 537, on the petition of certain creditors of an insolvent debtor, the assignee was directed to make claim to certain promissory notes which were claimed by the wife of the debtor; but her equitable right to a separate provision out of the proceeds was admitted and provided for. Such a case must require an extensive investigation of facts, as well as of the legal rights of various parties. In *Stearns* v. *Kellogg*, 1 Cush. 449, on a petition of attaching creditors, the proceedings of the court of insolvency were stayed, and

the debtor's property was ordered to be restored to him, on the ground that the judge had received illegal evidence in proof of the petitioning creditor's debt. In *Barnard* v. *Eaton*, 2 Cush. 294, the petition was intended to be an appeal. The court held that they could not sustain it strictly as an appeal; but it was sustained as an original petition, and a remedy was granted to the petitioner as ample as it could have been on an appeal. Chief Justice Shaw remarks: " This power is given to the court in broad terms, and it seems to us that it was intended to be so given in order to secure a consistent and uniform application of the law in all cases which could not be particularly foreseen. The more simple remedy of an appeal was given in the cases more likely to occur frequently, those of the proof of debts; but as there would be probably many questions springing up in the administration of a new and extensive system, it was the policy of the law to allow an application to this court by the summary process of petition, or the more elaborate proceeding on a bill in equity, as the nature of the case might require." pp. 301, 302. In *Thompson* v. *Thompson*, 4 Cush. 127, the court directed a reference to a master to inquire and report as to the truth of the facts or statements upon which the insolvency proceedings were commenced. In *Harlow* v. *Tufts*, Ib. 443, the court sustained a petition by an assignee, revising the proceedings in insolvency under the act respecting embezzlement of property. In *Richards* v. *Merriam*, 11 Cush. 582, it is said the court will not interfere or exercise any of its extraordinary powers to regulate or control the arrangement of affairs, the proper disposition of which rests upon considerations merely of expediency and probable advantage. Accordingly the court refused to revise a compromise made by the assignee with a debtor of the insolvent under the direction of the commissioner of insolvency. In *Hill* v. *Hersey*, 1 Gray, 584, the court exercised its power by expunging the proof of a fraudulent claim, on the petition of the assignee, who did not know of the fraud till it was too late to appeal. In *Hanson* v. *Paige*, 3 Gray, 244, on the petition of several persons who had been included in the proceedings against J. W. Blodgett & Co. as members of the

firm, the court heard evidence, and it appearing that, though these persons had been held out to the world as partners, yet they were not partners *inter sese,* the court passed an order vacating the proceedings as to them merely. In *Grafton Bank* v. *Bickford,* 13 Gray, 564, the court set aside the proceedings in insolvency on the ground that the judge had no jurisdiction.

In all these cases, the views expressed by the court are in conformity with the result to which the court have arrived in this case, namely, that it has jurisdiction to revise and correct the proceedings in respect to the matters set forth in the petition, including the decisions of the judge as to matters of fact. And in this revision we are not limited to the evidence which was before him, but may allow the parties to introduce other evidence. It is a power to be exercised with great caution; not in cases where there has been laches in the court of insolvency, but only where the party complaining can show that he has been aggrieved and has pursued his remedy diligently. In the present case there has been no want of diligence, and the questions presented to the court are of great importance to all the parties interested.

The court are also of opinion that where a limited partnership is formed under Rev. Sts. *c.* 34 or Gen. Sts. *c.* 55, if there is a neglect to comply with the provisions of the statute so as to make the special partners liable to creditors as general partners, they are by the terms of the statute made general partners Limited partnerships are not known to the common law. *Coope* v. *Eyre,* 1. H. Bl. 37. In this commonwealth, they exist merely by virtue of the statute. The Rev. Sts. *c.* 34, are very precise in pointing out the duties of the special partner, in order to avail himself of the protection of the statute, and in stating his liability if he fails to comply with its provisions. Section 5 'irects the publication of the certificate, and closes with the alternative provision, " and in case said publication be not so made, the partnership shall be deemed general." The 6th and 7th sections, as to the renewal or continuation of the partnership, and the duty of the special partner to abstain from the management of the business, close with a similar alternative

The expression manifestly means more than that a creditor may at his option hold him liable as a general partner. But § 13 is still more explicit. " In all cases not otherwise provided for in this chapter, the members of limited partnerships shall be subject to all the liabilities and entitled to all the rights of general partners." One of the rights of each member of a general partnership is to treat all the other members as general partners; and one of the liabilities of each member is to be made subject to the process of insolvency on the petition of any other member. It seems to have been the object of the legislature, in adopting a system of partnership that was novel, to subject special partners, who should make use of it but disregard the regulations it established for the security of the public, to an unlimited liability as general partners. We do not intend, however, to say that the agreement of partnership has no validity; for as between themselves, all their settlements must be in conformity with it. The fair import of the language forces us to this conclusion. Doubts have been expressed as to the policy of such stringent provisions on this subject; but questions of policy belong to the legislature. This court is intrusted with the mere duty of interpretation.

On looking into the evidence which has been taken in this case, and which is very voluminous, the court are satisfied that it is true, and was made to appear before the court of insolvency, so that the judge should have found that Whittier was a member of the firm. He commenced as a special partner, but never fully complied with the provisions of the statute. He now avers that he ceased to be a partner when the term expired. But he consented to the publication of an advertisement to which his own name was signed, stating that he continued to be special partner. He allowed cards, which bore his name as a special partner, to be circulated among those with whom the firm was in the habit of dealing. He wrote a letter to the other members of the firm, in which he stated the same fact. His letter to E. Russell & Co. asserted it, with the design that the assertion should be made known to the mercantile community. Documentary evidence is less liable to mistake than verbal

statements, especially after the lapse of years, and important changes in the circumstances of the parties; and in this case there is not enough, and was not enough before the court of insolvency, to outweigh written declarations deliberately made, and made for a grossly fraudulent purpose if they were untrue. They are so clearly expressed as to exclude the idea of mistake. But the court have not thought it necessary to enter into a full discussion of the evidence, though the whole has been carefully examined and compared.

A decree is to be entered vacating the proceedings upon the petition of Woodman, and making the injunction perpetual, and commanding the said Choate to proceed upon the petition of Lancaster against Woodman, Lancaster and Whittier as insolvent debtors.