## Williams v. Williams.

(Decided January 16, 1919.)

## Appeal from Harrison Circuit Court.

1. Wills—Intention of Testator.—The written language of a will is the best evidence of its meaning and the intentions of the testator, must be gathered from the will, itself, without the aid of extrinsic evidence, if it is unambiguous.

2. Wills—Latent Ambiguity.—When the will, upon its face, is unambiguous, and free from indistinctness and uncertainty, but uncertainty, as to the identity of the property devised, arises, when it is attempted to apply the language to the property, a latent ambiguity, then exists, and then it is competent to prove the circumstances of the property, its extent and manner of its use, and its connection with property, clearly devised, for the purpose of identifying the property, which the testator intended to devise.

DANIEL DURBIN and M. C. SWINFORD for appellant.

T. E. KING for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Emanuel Williams died on August 26, 1891, and left a last will and testament, which had been executed on February 10, 1891. He left surviving him, a widow and several children, to whom, by his will, he made devises, and, as it appears, made a disposition, by the will, of his entire estate. Previous to 1876, he became the owner of a lot, in the town of Cynthiana, which was situated upon the corner of Walnut street, and Pike street, in that city. The lot abutted on Walnut street, on the east, and on Pike street, on the south. The frontage of the lot, on Pike street, was forty-seven and one-half feet, and its depth, from Pike street, to the north end of the lot, was seventy feet, nine and one-half inches. Hence, upon the eastern side, it abutted upon Walnut street, the entire length, from south to north. At the time Emanuel Williams acquired the lot, there was, upon it, a two-story frame building, which stood upon the corner, made by the intersection of Walnut street and Pike street, and was about twenty feet, in width, and extended along Walnut street, to a depth of fifty-six feet. On the north end of this building, and as a continuation of it, a small one-story structure stood, and it, together with the main frame building covered all of the front of the lot upon Walnut street, except a few feet, at the north end of the lot. To make the situation of the buildings and fixtures upon the lot, intelligible, reference is made to the following diagram:

The letters A, B, C and D, represent the entire lot; the line, A, O, and D is the Walnut street side of the lot; the line A, D, F and B, is the front of the lot upon Pike street; the line, represented by the letters, A, E, X, S, R, V and O, and back to A, is the frame building; the letters, VI, JD, DO, and OV, represent the lines encircling the unoccupied part of the lot which adjoins Walnut street, and is to the north of the frame building. A stairway, commencing on Pike street, at E, extended up to the second story, on the outside of the side of the frame building, represented by the letters, E and X, at which place there was a small platform, and from the platform, the stairway descended along the wall, to the ground at the letter X. From the platform, a door entered into the upstairs room of the frame building. Another outside stairway entered the frame building, between R and S, but since, that stairway has been placed upon the inside of the frame house. Some time previous to 1876, Emanuel Williams, erected upon the west side of the lot, and fronting upon Pike street, a two-story brick building, which, with the kitchen attached, is represented on the diagram, by the lines, between the letters and figures, B, F, H, 7, 8, 9, W, and back again to B. The brick building has a slightly greater frontage on Pike street, than the frame. When the brick building was erected, he tore down the outside stairways on the western side of the frame building, and constructed a hallway, between the two buildings, which is indicated on the diagram, by the letters, F, E, X and H. Within the hallway, a stairway was erected, which went up, from the first floor of the hallway, to the second floor of it, and this stairway was erected against the brick building, and is indicated by the figures, 3, 4, 6 and 5. In the south end of the hallway, is a small room, used in connection with the brick building. A doorway enters the hallway, from the brick building. The front of the hallway, from F to E, is a brick wall, similar to the wall, from F to B. The rear wall of the hallway, from H to X, is built of wood, and consists, chiefly, of the door, which opens, from the hallway into the back yards of the two buildings. In the north end of the hallway, there was an entrance through its floor into the cellar, under the frame building. The roof of the hallway is a continuation of the roof of the brick building. A cistern is situated upon the lot, near the point indicated by the figure 8. There are two "intakes" for the sewers, at the points,

M and L. There is a doorway, from the frame building, to the outside, on the line, between X and S, and another, between S and R. On the western side of the lot, at the north end, there are two or more closets, which are indicated by the figures, and letters, 1, N. P, 1c, 1d, Y and 2. A wall separates the closet into two portions. The wall is indicated by the letters, Y to P. There is an opening, from the closet, between the figures 1 and 2, and, also, a doorway, between the letters and figures, P, to 1c. A coal house is indicated, by the letters and figures 1b, 1c, 1a, Z and C. About 1875 or 1876, the testator, constructed a high board fence, from six to ten feet in height, which commences at the point, X; thence to J; thence to K; and thence to N. Between the letters X and J, there is a gateway, or doorway, which is closed, by a door upon hinges, and a small narrow passageway, through which a person may pass, on the line, between J and K, and another passageway, through the board fence, on the line, from K to N. These two latter passageways, are closed, by swinging doors. From the time of the erection of this board fence, until his death, the testator let both of the buildings to tenants, and the tenants and occupants of the frame house and the patrons of the business therein made use of the narrow alleyway, embraced, by the letters, X, J, K, V, R and S, in going to the closet and coal house, upon the north end of the lot. The frame building was used as a saloon during a portion of the time, and a grocery store, during the remainder of the time, while the brick building was let to tenants for other purposes, and the tenants, in the brick building, made use of the closet, upon the side of the board fence, next to the brick building. The high board fence, as indicated, has been maintained at the same place, at which it was originally erected, by the testator, from the time of its erection, until the present time.

The testator devised the frame house to his son, the appellee, Dennis Williams, and the brick building to his son, the appellant, P. A. Williams. Disagreeing about the interest devised to each of them, this action was instituted, by the appellant, whom we will call, hereafter, the plaintiff, against the appellee, whom we will call, hereafter the defendant, to quiet his title to the portions of the property, claimed by each of them, when the defendant, by counterclaim, set up his claims to the property, and asked, that his title be quieted to certain portions of the prop-

erty, about the ownership of which, they disputed. The plaintiff claimed, that he was the owner of the property to the westward of the line, indicated by the letters, E, X, S, R, V and I, while the defendant claimed, that the line of division, between their property, was as is indi-cated by the letters, F, H, X, J, K, N, P and Y. The court adjudged, that the hallway, indicated by the letters, F, E, H, and X, was devised to them, jointly, and for their joint use, and that the line of division between their properties, north of the rear end of the hallway, was as indicated by the letters, X, J, K, N, P, and Y.

From the judgment, the plaintiff has appealed.

Neither of the parties owns any interest in the prop-erty, except to the extent, it was devised to them, by the testator's will, and hence, the extent of the ownership of each, must be determined from a construction of the will. The portions of the will, which relate to the property, in controversy, so far as concerns the present rights of the parties, are as follows:

"Item second: I own two houses and lots, one a frame, situated on the northwest corner of Pike and Walnut streets, in Cynthiana, the other a brick, situated on Pike, west of and adjoining the frame.

"Item sixth: I devise the frame house, on the corner of Pike and Walnut streets, to my son, Dennis Williams, and the brick house adjacent thereto, I devise to my son, Patrick Williams. There is a hallway between these two houses, now used only by the occupants of the brick house, but it may be desirable to have it used by both, in that event it shall be so used, and in the event of the destruc-tion of the house, in which it is built, the hall shall again be reconstructed for the use of both, in the event of the destruction of both houses, the ground, now covered by the stairway, will be equally divided between the two lots, and may be built upon as the owners shall provide."

A large mass of testimony was taken, much of which is incompetent, and a multitude of exceptions were taken and filed, all of which were overruled by the court. Their number precluded their consideration separately, in this opinion, but, suffice it to say, that the primary purpose in the construction of a will is to ascertain the inten-tion of the testator, and when this intention is ascer-tained, it controls, to the exclusion of any rules of con-struction.

The written language of a will is the best evidence of its meaning, and the intentions of the testator, must be gathered from the will itself, without the aid of evidence from the outside, if it is unambiguous. Carrol v. Cave Hill Cemetery Co., 172 Ky. 211; Jackson v. Payne, 2 Met. 567; Stephens v. Walker, 8 B. M. 600; Allen v. Vanmeter, 1 Met. 264; Watkins v. Bennett, 170 Ky. 464; Long v. Duvall, 6 B. M. 219; Tuttle v. Berryman, 94 Ky. 553. It is only where there are ambiguous terms or clauses, in a will, that extrinsic evidence may be called to assist in the ascertainment of the intentions of the testator. In such instances, the motives, which can reasonably be supposed to have actuated the testator, the purpose of making the will, the nature and extent of the property, and the relations, between the testator and devisees, may be looked to, in assisting the language of the will to express the intentions of the testator. Henry v. Henry, 81 Ky. 342; Levy's Extrx. v. Leeds, 151 Ky. 56. There seems to be a latent ambiguity in the will, in the present instance. From the face of the words used, there does not appear any indistinctness or uncertainty, but, when the words, which describe the property devised, are attempted to be applied to the subject, which they describe, then the ambiguity appears. The facts and circumstances of the property, relating to its extent, and use, and the manner of its use, and its appurtenancy to the buildings and necessity for it, for the comfortable enjoyment of the buildings, during the life of the testator, and at the time of the making of the will, may be proven, for the purpose of identifying the property, upon which the will is intended to operate. The proof, of these facts and circumstances, is not contradictory of the terms of the will, but enables the court to put itself in the place of the testator, when making his will. 40 Cyc. 1428: 1429: 1431; Tender v. Terrill, 2 Dana 47; Breckenridge v. Duncan, 2 D. K. M. 50; Carroll v. Cave Hill Cemetery Co., 172 Ky. 213. The words of the will are plain and unambiguous, as to the buildings devised, and it is conceded, that the testator intended, by his will, to devise the ground, not occupied by the buildings, together with the buildings, or in other words, to devise to each of his sons, a building, with the lot of ground, incident and appurtenant to it, but, the trouble arises, in determining the extent of the lots, and the line of division between them. With the rules as above stated, with regard to the com-

petency of the evidence offered, in mind, we have arrived at the following conclusions:

The hallway was not devised to either the plaintiff or the defendant, as a portion of the building devised to him. The testator, intended to devise the hallway to them, jointly, and for their joint use. Either one, desiring to use it in a reasonable and proper way, and for the purposes, intended for the use of a hallway, may do so, and this joint use may continue, until the destruction of both buildings, in which event, the land, which it covers, shall be divided equally between the two lots. The word, "hallway," was intended to be used, instead of "'stairway," as used in the will, and the testator, by the use of the latter word intended and meant "hallway," as the stairway only covers a very small portion of the ground devised to the parties jointly, until the destruction of both buildings, and the testator was evidently, intending to dispose of it, all, in severalty, at that time, and since an equal division of the land covered by the stairway, would not effectuate the intention of the testator.

In the second clause of the will, the testator describes the property devised to plaintiff and defendant, as "two houses and lots." He does not describe the property, as two houses, with the lots upon, which they stood to be thereafter ascertained, and defined. He, unquestionably, in making his will, had in his mind, two separate lots then existing. There had never been any division of the grounds, upon which the devised houses stood, into two separate lots, before their ownership by the testator, and the only division ever made by him, was that described by the high board fence. This division, he made, as soon as the brick house was completed, and he continued the division, until he executed the will, and as long as he lived, a period of time, from thirteen to fifteen years. During this period of time, the portions of ground, included by the lines described by the letters and figures, X, J, K, N, Y, C. Z, I, D, O, V, R, S, was used, nearly exclusively, in connection, with the occupancy and use of the frame house, and by the tenants, of the frame house and the patrons of the business carried on therein; while the grounds described, by the letters and figures, X, H, 7, 8, 9, 2, Y, P, N, K and J were used nearly exclusively by the tenants of the brick house, and in connection with it. It was certainly the intention of the testator to pass the grounds, which he owned, at this place, and not cov-

ered by the buildings, with the devise of the buildings, and hence, it can only be concluded, that he intended to devise the lands, contiguous or incident to each of the buildings, which were necessary to their ordinary use and enjoyment. It is true, there were doors, in the board fence, but shutters were maintained, upon them, and there is nothing to indicate, that the fence was not maintained as a division between the frame house and brick house. The evidence is contradictory, as to the respective values of the two lots, as described by the fence, but, if the frame house lot is slightly the more valuable, the testator imposes a greater burden upon this lot for the support of his afflicted son, than upon the brick house lot. The testator, shortly, before his death and it does not appear whether before or after the execution of the will gave the plaintiff, five or·six hundred dollars' worth of personal property, in excess of what the defendant received. Many speculative reasons are suggested by counsel, why the testator intended a division of the lots upon, the line described by the letters, and figures, G, 4, 3, R, V, I, but, the only tangible thing, in the evidence, is the division which the testator made and maintained himself, by the erection of the board fence, and which was in existence at the time, he executed the will, and as the will, clearly shows, he intended to devise a house and lot to each of the parties it can only be concluded, that he intended the lots, which were then and as then in existence, or else, he would have designated the boundaries of the lots, which he intended should be thereafter laid off.

The judgment is therefore affirmed.