## Hurst et al. v. Standard Oil Co. et al.

December 14, 1948.

Cleon K. Calvert, W. L. Hammond and Grant F. Knuckles for appellants.

H. L. Bryant, James W. Smith, Sampson & Sampson, James Sampson, Charles G. Middleton and Middleton, Seelbach, Wolford, Willis & Cochran for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This action was instituted originally by the appellants, W. D. Hurst and his brother, John Colson Hurst, as one in ejectment, but was later transferred by agreement of parties to equity. They set up claim to a tract of land in Bell County under the will of their grandfather, John C. Colson, Sr., through their mother, Udoxie Colson Hurst. The appellee, Standard Oil Company of Kentucky, answered and asserted ownership of a part of the land. The appeal is from a judgment denying the claim of the appellants against the Standard Oil Company.

A brief summary of the facts and circumstances pertaining to the case will enable us to understand better the contentions of the parties. John C. Colson, Sr., died testate in Bell County in 1882. He left surviving him his widow, Mrs. Catherine Colson, and several children. Mr. Colson was the owner of a number of pieces of real estate. He made specific devises to one of his children and to a daughter-in-law, and in the fourth clause of his will he directed that the residue of his real estate be divided among certain named children other than those to whom specific bequests were made.

A construction of the second clause of Mr. Colson's will is required. This clause follows:

"Second: I give and devise to my daughter, Udoxie Olivia Colson, all that piece and parcel of land, known as the land deeded to me by Clark Hunter and wife the deed of which land from them to me is of record in Knox County, Ky., said land is described as follows, viz: the deed aforesaid is hereby adopted as the boundary and description.

"TO HAVE AND TO HOLD the said premises aforementioned and described during her natural life then to her lawful heirs and assigns forever."

Udoxie Colson was 12 years of age when her father

died. In 1891, Udoxie married W. D. Hurst, the father of the appellants.

In 1886, two of the children of John C. Colson, Sr., who were acting as executors of his will and one of whom drafted it, executed a deed in which they made a partition of certain of their father's lands. The tract conveyed to Udoxie under that deed and that to her sister, Laura Bingham, were both included in the description given in the deed referred to in the second paragraph of Mr. Colson's will. The land now in controversy is a part of the land conveyed to Laura Bingham under that deed. In 1893, Mrs. Colson and her children, including Udoxie Hurst and her husband, joined in a deed to Laura Bingham confirming the transfer made to her in the deed executed by the executors in 1886. In October, 1893, a suit was filed by Laura Bingham and others to whom she had transferred parts of the land in dispute as plaintiffs against Udoxie Hurst and her husband and others, including the executors of Mr. Colson's will, wherein it was claimed that the second clause of the will was ambiguous. It was asserted that by the will's express language it could not be ascertained which land the testator had intended to devise to Udoxie Hurst, but that in fact he had intended to devise the tract conveyed to her by the executors in their deed of 1886. An answer and counterclaim were filed in that action, but were withdrawn before the case was submitted. Considerable proof was taken in support of the claim of the plaintiffs in that action. In the final judgment, from which no appeal was ever prosecuted, it was held that the second clause of the will of John C. Colson, Sr., was ambiguous; that the meaning and intent of Mr. Colson was to devise to Udoxie Hurst the land which had been conveyed to her by the executors in 1886; and, further, that this was all of the land he intended to devise to her under the words, "all that piece and parcel of land deeded to me by Clark Hunter and wife." It recited also that the executors were authorized under the will to convey to Laura Bingham the land which they conveyed to her in the deed of 1886.

Mrs. Udoxie Hurst died in 1943. Shortly thereafter her surviving sons and only heirs instituted this action wherein they claimed title to a part of the land conveyed to Laura Bingham by the executors in their deed of 1886.

It was held that there was a latent ambiguity in the second paragraph in the will of John C. Colson, Sr.; that the land referred to therein was in two tracts, one known as the Hunter tract, which was conveyed to Udoxie Hurst by the executors in 1886, and the other, the Pemberton tract, which was conveyed to Laura Bingham by the executors in 1886. The judgment set forth further that the ruling was based on the evidence and not the decision of the court in the suit filed in 1893, and that the judgment in that action was not binding on the appellants in this case. The entire record in the 1893 suit was incorporated in the record now before us. This was the only evidence considered by the court, aside from one deposition which had no bearing upon the construction of Mr. Colson's will.

Counsel for the appellants have ably briefed several questions of law which they urge in support of their claim. On the other hand, counsel for the appellee set forth with equal vigor their contentions. As we view the case, the principal questions involved are (1) was there latent ambiguity in the second clause of Mr. Colson's will; and (2) if there was, does the evidence support the finding of the chancellor? If both questions should be answered in the affirmative, as we think they should, then a discussion of other legal questions raised by the appellants becomes unnecessary.

Some question is raised as to whether Udoxie Hurst took a life estate under the second clause of her father's will, or whether she took a fee simple title. While we think it is clear that she took only a life estate and this Court so held in the case of Hurst v. Russell, 257 Ky. 78, 77 S. W. 2d 355, we deem it unnecessary to discuss this question because our concern relates primarily to the specific property in which Mrs. Hurst was given an interest, rather than the character of interest given her.

It is at once apparent from even a casual reading of the second clause of Mr. Colson's will that an examination of a deed on record in Knox County is required wherein Clark Hunter and his wife were grantors and Mr. Colson was a grantee. That deed was executed in 1860. Clark Hunter and his wife were parties of the first part. J. R. Campbell, attorney in fact for Eliza-

beth Pemberton and her husband, was the party of the second part, and J. C. Colson was the party of the third part. The first two parties were grantors and the third the grantee. The consideration paid to the Hunters was $2550 and that to Campbell was $900. Obviously, both of these parties conveyed some interest in the land which was described as a single boundary. It is at once apparent, therefore, when the clear and unequivocal wording of the will is considered in the light of existing facts, an uncertainty arises as to what land was "known as the land deeded" by Clark Hunter and his wife to Mr. Colson. Such an uncertainty is termed a latent ambiguity as distinguished from a patent ambiguity, which is one apparent on the face of an instrument. Extrinsic evidence is admissible to explain the uncertainty in the case of a latent ambiguity. Williams v. Williams, 182 Ky. 738, 207 S. W. 468; and Jennings v. Jennings, 299 Ky. 779, 187 S. W. 2d 459. The appellants vigorously contend that Mr. Colson's intent was clearly expressed in his will, and that he meant for his daughter, Udoxie, to take "the exact land described in the Clark Hunter deed for only one tract is there described, and no division or separation of it is even suggested by testator." Actually there was no "Clark Hunter deed," but rather a "Clark Hunter-J. R. Campbell deed." For the reasons given we think the court properly considered the evidence.

Having decided that there was a latent ambiguity in Mr. Colson's will, and that it was permissible to hear evidence concerning that ambiguity with the view of ascertaining what land was known as the land deeded by Clark Hunter and his wife to Mr. Colson, we shall review briefly that evidence. We have noted that in both the judgment of 1894 and that in the action now before us it was held that the Clark Hunter land did not include that claimed by the appellants. The land in controversy was the share of Elizabeth Craig Pemberton in the George Craig estate, and will be referred to as the Pemberton land, though it is sometimes referred to as the John Craig land. George Craig died intestate in 1833. Sometime before 1860 Clark Hunter had purchased the shares of three of Mr. Craig's heirs and at about the same time Mr. Colson was negotiating for the purchase of the Pemberton land. Mr. Colson was also negotiating

for the purchase of the shares of the Craig estate held by Clark Hunter. A suit was filed to divide the Craig estate and Mr. Colson was made a party to that action. The petition set forth that Mr. Colson was the owner of the Pemberton interest in the estate, but the proof indicates that the purchase was made after the land was divided. The report of the commissioners appointed to divide the Craig estate allotted to Mrs. Pemberton and Clark Hunter a single tract of land designated on their map as Tract No. 2. This map shows a line bisecting Tract No. 2 on the east side of Yellow Creek, but it is clear from the record that this line was not intended as a division of the share allotted to Mrs. Pemberton and those to Clark Hunter. Reference is made in the evidence to lands owned by other parties and there is also a subsequent deed from Clark Hunter's widow and others to Mr. Colson. In their division deed of 1886 the executors conveyed to Udoxie Hurst the land included in the Hunter-Campbell deed which lies to the east of Yellow Creek and a portion of that on the west of the Creek. The remainder of the portion on the west of the Creek is the land now in controversy. The Pemberton land, along with another tract not in dispute, was the land conveyed to Laura Bingham in 1886. As we have noted, the 1893 deed from certain of Mr. Colson's heirs, including Udoxie Hurst and her husband, to Laura Bingham, conveyed the same lands as did the 1886 deed of the executors.

W. J. Campbell, a son-in-law of George Craig, and attorney in fact for the Pembertons, testified that before the suit was filed to divide the lands of the Craig estate, Jeff Craig had made a division thereof and had allotted to Mrs. Pemberton the land in controversy in this action; that the division made by the commissioners was the same as that made by Jeff Craig and the part allotted to Mrs. Pemberton was not included in the land allotted to Clark Hunter; that, even though the land allotted to Clark Hunter and that allotted to Mrs. Pemberton were included in one boundary, the land actually allotted to Clark Hunter was known as the Clark Hunter land, while that allotted to Mrs. Pemberton was never so known; that Clark Hunter was in possession of the Pemberton land at one time under a verbal contract and that he as attorney for the Pembertons brought an action

against Hunter for rent; that Hunter introduced evidence showing that the Pembertons had told him to pay rent or vacate, and that he, Hunter, had vacated the land; that J. C. Colson, Sr., the magistrate before whom the case was tried, rendered a judgment in favor of Clark Hunter; that he, as attorney for the Pembertons, and not Clark Hunter, sold to Mr. Colson the land referred to as the Pemberton land; that Mr. Colson bought the Pemberton land after he had purchased the Clark Hunter land; and that after the sale the tracts were referred to as the Pemberton land and the Clark Hunter land.

The widow of Mr. Colson testified that the Clark Hunter place was known as the home place and her family knew it as such; that Udoxie Hurst lived on the home place and owned a part of the home boundary; that she did not think the Clark Hunter place extended beyond the ditch; that Mr. Colson had said he wanted his daughter, Laura, to have "the place right down there," waving his hand toward the place adjoining the Hunter place, but did not name it; that he was referring to the John Craig place (the Pemberton land); and that the conversation occurred a week or two before Mr. Colson's death.

A son-in-law of Mr. Colson said that the land given Laura Bingham was the John Craig land; that the place upon which the brick house occupied by the Colsons was located was the Clark Hunter land; that, upon the scrivener not arriving to draw up Mr. Colson's will as quickly as Mr. Colson had expected, he told those present that he wanted the home boundary divided among his daughters, Mary, Laura, Cordie, and Udoxie, and that he designated the line between the shares of Udoxie and Laura; that if he ever got up he was going to make deeds to all the lands describing their boundaries; and that he wanted Udoxie to have the home place which was a part of the home boundary, the latter containing from 1000 to 1300 acres.

W. G. Colson, a son of the testator, and the scrivener of his will, testified that he wrote his father's will not changing the meaning and changing the wording but little; that in reference to the second clause of his will his father said, "I want Udoxie to have the land known

as the Clark Hunter land her lifetime—you see I want this land to remain in the family, as it will always be a good home;'' that he made the reference in the will to the deed on record in Knox County thinking the deed described the land referred to by his father and did not know then that the deed was a joint conveyance; that before his father made his will he often spoke of the boundaries of his lands and before his death he had a survey made and they ran the Hunter tract, the Tinsley land, the Lee land and the lines around the Craig house as defined in the deeds later made to Laura Bingham; that the surveying party went to a point on the west bank of Yellow Creek, and, under the direction of their father, they went on to the mouth of the ditch which ran into Four Mile Creek and then on to the Baughman Spring and from there the surveyor ran the lines; that during the latter part of the survey his father remarked that the land south of the line running from the plum tree to the Spring and on around to the Tinsley land was the Clark Hunter land; that the line from the mouth of the ditch to the Baughman Spring was originally made so that Hunter and the owner of the land around the John Craig house could get water; that during the writing of the will his father said he could insert a clause authorizing him and the other executors to make a division of his lands and that the division could be made according to his directions; that he specifically stated he wanted Udoxie to have the Hunter land and Laura to have the lands on the other side of the Creek and the land around the John Craig house (the Pemberton land) and other lands as he had directed; that the executors followed his father's directions in the division deed made in 1886; that Mr. Colson read his will and when he started to put in the will reference to calls his father said it was unnecessary to do so because he had already pointed out what each child was to get and that power would be given his executors in the will to make the division; and that at the time of the division the share allotted to Udoxie was of greater value than that given the other children. Mrs. Bingham's husband said Udoxie's share was worth from $2000 to $3000 more than that of any other child.

We are fully cognizant of our rulings to the effect that a writing must be scrutinized carefully before the

rule relating to a latent ambiguity is made applicable. This case we believe clearly to be one involving a latent ambiguity, and where evidence may be introduced to explain the uncertainty. The introduction of evidence was necessary to ascertain what land Mr. Colson was referring to as the land deeded to him by Clark Hunter and his wife. A review of all the evidence convinces us that both the judgment of 1894 and that in the present action were correct in holding that Udoxie Hurst took only the Clark Hunter land and not the share of the George Craig estate given to Elizabeth Craig Pemberton. The latter tract was conveyed to Mr. Colson in the Hunter-Campbell deed by J. R. Campbell as attorney in fact for the Pembertons. Udoxie Hurst never had an interest in the Pemberton land, and it was duly conveyed by the excutors to Laura Bingham in 1886.

For the reasons given we think the judgment should be and it is affirmed.