No. 10,566.

### JEWETT ET AL. *v.* THE STATE, EX REL. HARROD.

COUNTY CLERK.—*Liability of his Sureties for County Order Converted by him.* —*Statute Construed.*—A county order, paid into the hands of a county clerk under the order of the proper judge, comes within the meaning of the word "funds" in section 5850, R. S. 1881, and, under that section, such clerk and his sureties are liable to the person entitled to such county order, upon the refusal of the clerk to account for or deliver it to such person.

From the Scott Circuit Court.

*C. L. Jewett* and *H. E. Jewett,* for appellants.

*C. B. Harrod,* for appellee.

NIBLACK, J.—At the general election held in October, 1876, Newton M. Wilson was elected clerk of the Scott Circuit Court, and, on the 17th day of November, in the same year, he executed an official bond and took the oath of office as such clerk.   His official bond was signed by Matthias E. M. Hoagland, Dexter McClure, John H. McFadden, John W. Rice, William Wilson, John H. Sommerville, Benjamin Phillips and Charles L. Jewett as his sureties.

On the 19th day of March, 1877, the said Wilson entered upon his duties as such clerk, and served for the term of four years.

This was an action against him and his sureties on his official bond by William G. Harrod, the administrator of the estate, unadministered, of Henry M. Wilson; deceased, a former clerk of the Scott Circuit Court: *First,* for the conversion of certain fees and costs due to the decedent, alleged to have been collected by the said Newton M. Wilson while

in office. *Second.* For the alleged conversion of certain notes, accounts, choses in action and a county order belonging to the estate of the decedent, which had been deposited with him, the said Newton M. Wilson during his term as clerk by order of the said Scott Circuit Court.

The sureties only appeared to the action, and issue being joined between them and the plaintiff, the court trying the cause made a finding for the plaintiff, and assessed the relator's damages at $159.28. A motion for a new trial, challenging the sufficiency of the evidence, having been first denied, judgment was rendered upon the finding.

It was satisfactorily established at the trial that while he was holding the office of clerk as above stated, the said Newton M. Wilson received fees due to his predecessor, Henry M. Wilson, amounting to the sum of $61.28, which he converted to his own use; also, that during the said Newton M. Wilson's term as such clerk, one Samuel S. Crowe was the administrator of the estate of Henry M. Wilson, then deceased, acting within the jurisdiction of the Scott Circuit Court; that said Crowe, not having fully administered such estate, had remaining in his hands, as assets belonging to the same, certain notes, accounts, choses in action, and a warrant drawn by the auditor upon the treasurer of Scott county, commonly known as a " county order," for $98 ; that upon a report showing the condition of the estate, and at the request of said Crowe, the court ordered that he, as such administrator, should turn over said notes, accounts, choses in action and county order to the said Newton M. Wilson as clerk, and that he, the said Crowe, should thereupon be discharged from the administration of the estate ; that said Crowe at once delivered over said notes, accounts, choses in action and county order to the said Wilson as such clerk, who executed a receipt for the same, and Crowe was accordingly discharged; that Harrod, the relator, had succeeded Crowe in the administration of the said Henry M. Wilson's estate, and had, since the expiration of the said Newton M. Wilson's term as clerk, in connection with other mat-

ters, demanded from him the county order so delivered to him by Crowe; that he, the said Wilson, denied having ever had said order, and refused to deliver the same to the relator, and had never accounted for such order to any one entitled to receive it; that said order was of the value of $98.

It is certified to us through the bill of exceptions, that the value of this county order was taken into account in making up the amount of the damages assessed in favor of the relator, and the decision of the circuit court in that respect was assigned as a cause for a new trial, upon the theory that the sureties of a clerk are only responsible for *money* paid into court by its order, and that a county order is in no sense money within the meaning of the first section of the act of March 9th, 1875, conferring additional authority upon the clerks of the several courts of this State in certain respects.

The section of the act of 1875 referred to is now known as section 5850, R. S. 1881, and is as follows:

"The clerks of the several courts throughout this State are hereby authorized to receive money in payment of all judgments, dues, and demands of record in their respective offices, and all such funds as may be ordered to be paid into the respective courts of which they are clerks, by the judges thereof; and said clerks, with their sureties, shall be liable on their official bonds for all moneys so received by said clerks, and so paid into such courts under the order of the judges thereof, to any person who may be entitled to demand and receive such money or funds from them."

By this section of the statute, and under the order of the Scott Circuit Court, Wilson, the clerk, was authorized to receive from Crowe any of the *funds* in his hands belonging to the estate of Henry M. Wilson. The word "funds," as used in the connection in which we find it as above, has evidently a much broader meaning than is ordinarily applied to the word "moneys," and while the two words are often used as convertible terms, the former is much more than the equivalent of the latter.

Jewett *et al. v.* The State, *ex rel.* Harrod.

A *fund* may be denominated a deposit or accumulation of resources from which supplies are drawn, out of which expenses are provided, or which may be available for the payment of debts or the discharge of liabilities. The assets of an estate constitute a *fund* in the hands of the executor or administrator, which, in certain cases, he may be required to bring into court. There are, however, many kinds of assets which it would be both unsuitable and impracticable to bring into court. We must, therefore, construe the section of the statute, above set out, as meaning that a clerk is only required to receive into his custody such articles of property as either constitute money or the representative, or in some sense the equivalent, of money, and as may be conveniently kept and taken care of by him. What the courts may or may not ordinarily, or otherwise, require to be paid into court, is a question we need not fully consider at the present hearing. It is sufficient for our present purpose to hold that whatever funds, or fragmentary part of a fund, a clerk may be required to take into his custody by order of court, he and his sureties are responsible for on his official bond.

The county order in controversy purported to be the representative of a fixed value in money, and possessed some of the attributes of a paper currency used as the equivalent of money. It was, in addition, a component part of a fund in the hands of Crowe in his fiduciary capacity, and within the jurisdiction of the Scott Circuit Court. It had, consequently, all the essential characteristics of a fund, or part of a fund, which might be ordered to be paid into court, and for which Wilson, as clerk, might be held liable on his bond.

The court below did not, therefore, as we conclude from the evidence, err in taking the value of this county order into account in assessing the relator's damages.

The judgment is affirmed with costs.

Filed Jan. 10, 1884. Petition for a rehearing overruled April 17, 1884.