DANIEL A. COOK, Exr., *vs.* FIRST UNIVERSALIST CHURCH
*et al.*

PROVIDENCE—JUNE 3, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Wills. Legacies. Construction. "Heirs of Money." Minors.*

Testatrix, a widow without lineal descendants, and whose estate consisted entirely of personalty, by her will made pecuniary bequests to various religious bodies and to individuals, including next of kin, relations by

blood and marriage, and bequests of specific articles to strangers, the pecuniary bequests being of varying amounts, kindred of the same degree being treated unequally. To the three minor children of A. she gave $10 each, the same to be placed in the care of B., who deceased shortly after the death of testatrix. The will contained the following clauses : "In case of my decease while in the family of C., I give to him $100 to defray any expenses that may occur." Testatrix died at C.'s residence. Sixteenth. "I desire to put it on record that should the sum of money left by me at the time of my decease be more than sufficient for my executor to pay the sums named herein, then each heir of money shall receive the same per cent. of increase on the sum of money I have bequeathed to them ; but should long-continued sickness come to me, and my money be reduced, then let no favoritism be shown to my heirs of money, but let each suffer the same per cent. of loss."

After the payment of debts, a sum of money was left in the hands of the executor to be distributed under the sixteenth clause :—

*Held*, that the words "heirs of money" were used to denote those to whom legacies of money were given in distinction to those to whom bequests of specific articles were made, and not including dispositions of money which testatrix regarded as a moral if not legal obligation, nor dispositions of money whereby the purpose to be accomplished by the amount expressed in the will was fully accomplished. The sum total of the money legacies, as above defined, divided by the pecuniary bequest, furnishes the fraction which each legatee is to receive under this clause.

*Held*, further, that the words in the bequest to C. "to defray any expenses that may occur" were too general to be applicable to a debt, especially as testatrix had otherwise provided for the payment of her debts, and were intended as a recognition of kindness, and hence C. was properly included with the other legatees.

*Held*, further, that the legacies to the minor children of A. should be paid to their guardian *ad litem*, to be held by him until they attained their majority, or until guardians of their estates were appointed, or until further order of the court.

BILL IN EQUITY for the construction of a will. The facts are stated fully in the opinion. Heard on bill and answers.

ROGERS, J. This is a bill in equity for the construction of certain clauses of the will of Sarah E. Salisbury, who died February 3, 1899, at the age of eighty-four, a widow, leaving neither children, father, nor mother surviving her.

January 24, 1899, the testatrix made the will in question, disposing of all her property, which consisted entirely of personalty, in and by which, after providing for the payment of her debts and funeral expenses and the investment of $100 to secure perpetual care for a cemetery lot in which a deceased

brother was buried, she gave to the First Universalist Church of the city of Providence, for the use of the Sunday-school, $100 ; to the same, to complete her pledge for the Japan Mission connected with said church, $25 ; and to said church, for one year's pew rent, $10. She then gave to four other Universalist church or religious organizations $100 each; and she made bequests to various individuals—to some of specific articles, to others of money, and to still others of both specific articles and sums of money. The will gave varying sums of money to blood relatives of the testatrix of the same degree, and to some of the same degree she gave only specific articles, but no money ; thus to her sister Frances Salisbury she gave $25 ; to her sister Emma K. Tracy, $50 ; and to her sister Ann Maria Bradford, no money but only specific articles of personal property. So in the case of her niece and nephew, children of her deceased brother James Salisbury, she gave to the niece specific articles, and to the nephew $50 in money and also specific articles. To some of the children of her living sisters, who, though blood relatives, would not be among her next of kin, she gave pecuniary legacies, and also to a daughter of a sister of testatrix's deceased husband, and to such daughter's daughter, she gave pecuniary legacies. To her niece Addie L. Baxter she gave $200, to be used to assist her in giving her (said Addie's) niece Marion a musical education, and to said Addie she gave a gold watch to be given to the said Marion ; and to the said Addie, for her own use, she gave $50. To the three minor children of Annie Vickery she gave $10 each, the same to be placed in the care of their grandmother, Ann Maria Bradford, who was a sister of the testatrix, and who died March 17, 1899, shortly after the testatrix's death. For Nathan D. Cole and wife, he being the husband of a niece of the testatrix, she made this provision, viz.: "In case of my decease while in the family of Nathan D. Cole I give to him $100 to defray any expenses that may occur. To Carrie H. Cole, wife of Nathan D., I give $200." The testatrix died at Mr. Cole's residence.

The sixteenth clause was as follows, viz.: " As I am now at the time of the signing of this will so far advanced in life that

the circumstances of my life will not be likely to so change as to make it necessary to make another will, I desire to put it on record that should the sum of money left by me at the time of my decease be more than sufficient for my executor to pay the sums named herein, then each heir of money shall receive the same per cent. of increase on the sum of money I have bequeathed to them; but should long-continued sickness or misfortune come to me before my mortal career is ended, and my money possession be reduced thereby, then let no favoritism be shown to my heirs of money, but let each suffer the same percentage of loss."

All the beneficiaries, other than religious corporations, to whom pecuniary legacies were given in the said will were related to the testatrix by blood or were connections by marriage, and all the beneficiaries receiving pecuniary legacies, or, when dead, their personal representatives, have been made parties respondent, guardians *ad litem* having been appointed for all minor respondents.

The complainant represents in his bill that from the personal property of which the said testatrix died possessed, he, as executor, has paid all the debts and funeral expenses of the testatrix, all pecuniary legacies given in and by said will, except only the legacies of $10 each to the three children of Annie Vickery to be placed in the care of their grandmother, Ann Maria Bradford, now deceased, and except also such legacies as are given by the sixteenth clause of said will; that he has invested the sum of $100 to secure perpetual care for the lot in the cemetery, as provided for in the will; that he has delivered to the several legatees all articles specifically bequeathed in and by said will; that he has paid all expenses of administration which have accrued, excepting only the compensation for his own services as executor and the expenses incurred by him in said capacity for legal services, and that there remains in his hands as executor a large sum of money, so that, after the payment of all expenses of administration hitherto unpaid, and all which may hereafter be incurred, there will still remain in his hands about $4,000 to be dis-

tributed in accordance with the provisions of the sixteenth clause of said will.

This suit now comes before the court on bill and answers, there being no dispute in regard to the facts, and the determination of the court is sought as to the construction of certain clauses of the will and as to the effect thereof, and particularly in regard to the following questions, viz.:

1st. What persons, corporations, or classes of persons are entitled to a distributive share of the money now in the hands of the executor?

2nd. What persons or corporations were intended by the testatrix to be designated by the words "heirs of money," as used by her in the sixteenth clause of said will?

3rd. In case it shall be considered that the respondent, the First Universalist Church of Providence, is entitled to a distributive share of the aforesaid money, is said First Universalist Church entitled to a share in said fund in respect to that portion of the bequest in the third clause of said will made for the purpose of completing the pledge of the testatrix for the Japan mission connected with the church, and with respect to the bequest to said church for one year's rent of pew?

4th. Is the respondent Nathan D. Cole entitled to a distributive share of said money with respect to the gift to him, to defray any expenses that might occur in case of the decease of the said testatrix while in the family of said Nathan D. Cole?

5th. To whom and in what manner should be paid the legacies given to the children of the aforesaid Annie Vickery in and by the tenth clause of the will, and directed to be placed in the care of their grandmother, said Ann Maria Bradford?

In seeking the intention of the testator, when interpreting a will, an elementary rule, as laid down in Wigram on Wills, 58, is that a testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless, from the context of the will, it appears that he has used them in a different sense, in which

case the sense in which he thus appears to have used them will be the sense in which they are to be construed.

(1)     The phrase "heirs of money" used by the testatrix in the sixteenth clause of her will has no technical meaning, and was evidently coined to express a meaning that certainly is not apparent at first glance.   In its strict and technical import the word *heirs* applies to the persons appointed by law to succeed to the real estate of one dying intestate, and the word does not strictly apply to personal property.   Bouv. Law Dict., *Heir*.   It is clear, therefore, that the word *heirs* in the will in question was not used in its strict technical sense, for there was no real estate for it to apply to, and no intestacy, and it was limited and qualified by the words *of money.*

Frequently, when it is apparent that the word *heir* was not used in its strict technical sense, courts have construed it as applying to the persons appointed by law to succeed to personal property; that is to say, the next of kin, or persons who would take under the statute of distribution.   15 Am. & Eng. Ency. Law, 2 ed. 327.

It does not seem to us, however, that the testatrix used the word *heirs* in any such sense, for coupled with the possibility of the persons referred to under that designation receiving a benefit, in case of an excess of personal property over and above what was necessary to pay all the legacies in full, was a liability of suffering loss if there should be a deficit of personal property to pay all the legacies in full; and until the testatrix's death it could not be known whether those included under the word heirs in the sixteenth clause would be a favored class or the reverse.   One capable of receiving under that clause must also be capable of losing under it, according to the happening of the contingency; and unless one was to receive money under other provisions of the will, there would be no standard by which to measure how much his legacy was to be reduced in case there was insufficient to pay all legacies in full.   It does not seem to us that the words *heirs of money* were meant to apply to the testatrix's next of kin as a class, nor to those merely of her next of kin

to whom she had given money in and by the clauses of her will other than the sixteenth clause, nor to relatives by blood nor connections by marriage to whom she had given money who were not strictly her next of kin; as, if it was so meant, then, in a contingency, the religious corporations might receive their legacies in full, while the next of kin or blood relatives might receive theirs very much reduced to pay the other legacies.

It is the cardinal rule of construction that the testator's intention must control if it be not inconsistent with some established rule of law, and particular expressions in a will must yield to the general intent. It is not a word or a clause in a will, but the manifest intent of the testator, which is sacred and must prevail. *Bailey* v. *Brown*, 19 R. I. 669.

Courts have sometimes construed the word *heirs* to mean legatees. See *Eisman* v. *Poindexter*, 52 Ind. 401; *Weir's Will*, 9 Dana (Ky.), 434, 442; *Greenwood* v. *Murray*, 28 Minn. 120; *Collier* v. *Collier*, 3 Ohio St. 369.

Construing the words *heirs of money* as pecuniary legatees, or those to whom legacies of money are given, in contradistinction to those to whom bequests of specific articles other than money are made, and not including dispositions of money which the testatrix evidently regarded as a moral if not a legal obligation upon her, and not including, also, a disposition of money whereby the purpose to be accomplished by the amount expressed in the will was fully accomplished, so simplifies the interpretation of this will as to satisfy us that that is the proper solution of the main question submitted to us.

The testatrix was an old lady of eighty-four, with no father, no mother, no husband, and no lineal descendants living, her nearest blood relations being in collateral lines. She had three sisters living when she made her will who were still living at the time of her death, and she had nephews and nieces and grandnephews and grandnieces, and connections by marriage; but her nearest blood relations, judged by the disposition she made in their favor in comparison with the disposition she made for more remote kindred and for religious

corporations, by no means had the chief claim upon her in her opinion. Of her three sisters, one was to receive in money (apart from under the sixteenth clause) but $25, another $50, and the third no pecuniary legacy at all ; whereas a daughter of the third sister above mentioned was to receive $200, and there was another gift of $200 to another remoter relative, also a gift of $100 to a niece, and $100 each to five religious corporations. It is evident that she was not clear, as she well might not have been, how much estate she would leave at her death ; for she did not know, when she made her will, how long she would live, what demands for money might be made upon her, or what shrinkage or accretion her property might undergo. She was evidently a Universalist in religion and took a great interest in religious things, and, having no children, none of her relatives had any such claim upon her as a child or children of her own would doubtless have had. Under these circumstances, desiring to dispose of all her property by will, she made gifts of specific articles—mementos— to certain of her legatees, and then divided the property that was left, after being reduced to money, in such amounts relatively as she desired ; but not knowing how the money would hold out to pay all legacies in money in full, or whether there would be more than enough for that purpose, instead of making one or two persons her residuary legatee or legatees, she simply, in the sixteenth clause—which was really a residuary clause—established the proportions or a standard of measurement by which the residuum was to be divided, and that was merely to increase or diminish ratably and in proportion the legacies of money made in prior clauses, according as her property at her death should show a surplus or a deficit when it came to paying the pecuniary or money legacies. In other words, the sum total of the money legacies contained in the will, other than in the sixteenth clause, was to serve as a denominator, speaking arithmetically, and the amount of each pecuniary legacy was to serve as a numerator, so that thereby the fraction each legatee was entitled to could be readily and quickly determined.

The sums to be added together for a denominator amount

to 1,255. In selecting the sums making up that figure we exclude, of course, all funeral expenses and just debts. We also exclude the sum of $100 to secure perpetual care for the lot in Hunt's cemetery, as that sum completes the testatrix's purpose in securing the end desired. Under the third clause of the will we exclude the sum of $25 to complete testatrix's pledge for the Japan mission therein referred to, and also the sum of $10 for one year's pew rent, as her purpose seems to have been fully carried out by paying what she evidently deemed moral, if not legal, obligations upon her.

We include the $100 given in the sixth clause to her niece's husband, Nathan D. Cole, to defray any expenses that may occur in case of her decease while in the family of said Nathan D. Cole. As she had already provided for her funeral expenses in and by the first clause of her will, the expenses referred to in the sixth clause could not have been of that character, although the sum given was only on the condition of her decease while in Mr. Cole's family. The expenses referred to were certainly not debts, for she had also provided for the payment of all her just debts, and no matter how long she might live in Mr. Cole's family, if she were not there at the time of her decease the legacy would not apply, and she did not attempt to define what expenses or class of expenses were to be defrayed by the $100. It seems to us from the will that the testatrix felt particularly friendly to the Cole family. She gave to Mrs. Cole, who was the testatrix's niece, as large a sum as was given to any legatee under the will; she contemplated the possibility—not to say probability—of dying while in her niece's husband's family, and it is only natural that she should remember him in case the kindly relations then existing should continue to the end. It seems to us that the words "to defray any expenses that may occur" were too general and undefined to be applicable to a debt, but were used to show her appreciation of his recognized kindness merely, and were intended to be the equivalent of such expressions as "a token of my esteem," or "in appreciation of the trouble and expense he may have been put to on my account," and that the legacy to Mr. Cole is prop-

erly to be included with the other pecuniary legacies, to be augmented or diminished, as the case might be, under the sixteenth clause.

Taking 1,255 as the denominator of the fractions of the division of the surplus, then the First Universalist Church of Providence for the use of the Sunday-school, mentioned in the third clause of the will, would take $\frac{100}{1255}$, which, by reducing the fraction, would be equivalent to $\frac{20}{251}$ of the surplus; the four religious corporations mentioned in the fourth clause would each take $\frac{100}{1255}$, or $\frac{20}{251}$; Addie L. Baxter, mentioned in the fifth clause, would take $\frac{200}{1255}$, or $\frac{40}{251}$, to be used in assisting her in giving her niece Marion a musical education, and the said Addie L. Baxter would take for her sole use $\frac{50}{1255}$, or $\frac{10}{251}$; Nathan D. Cole, mentioned in the sixth clause, would take $\frac{100}{1255}$, or $\frac{20}{251}$; and his wife, Carrie H. Cole, would take $\frac{200}{1255}$, or $\frac{40}{251}$; James Salisbury, mentioned in the seventh clause, would take $\frac{50}{1255}$, or $\frac{10}{251}$; the three children of Annie Vickery, mentioned in the tenth clause, would each take $\frac{10}{1255}$, or $\frac{2}{251}$; Frances Salisbury, Mehetable J. Densmore (who has deceased since the testatrix's death, and the administrator of whose estate is a respondent in this suit), and Ella, said Mehetable's daughter, mentioned in the eleventh clause, would each take $\frac{25}{1255}$, or $\frac{5}{251}$; and Emma K. Tracy, mentioned in the twelfth clause, would take $\frac{50}{1255}$, or $\frac{10}{251}$.

Inasmuch as the amounts given to the three Vickery children respectively are so small that the expense of having guardians appointed would absorb a large part thereof, and as their grandmother, Ann Maria Bradford, in whose hands said shares were to have been placed, has deceased since the testatrix's death, the same may be paid to the guardian *ad litem* of said minors in this suit, to be held by him for said minors respectively until they respectively attain their majority, or until guardians of their respective estates may be appointed, or until the further order of the court.

*Van Slyck & Mumford*, for plaintiff.

*Elmer J. Rathbun, Joseph C. Sweeney, and Seril C. Armstrong*, for respondents.