## Jennings et al. v. Jennings et al.
## Same v. Jennings' Ex'r et al.

May 4, 1945

Leslie W. Morris and Marion Rider for appellants Edward Jennings and others.

Kinsolving & Reasor, W. W. Jesse, Robert Matthews, William Hays and J. Ballard Clark for appellees C. L. Jennings and others.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

This controversy over the construction of the will of the late George W. Jennings springs from different views as to what he meant by the words "funds" and "heirs" in the second paragraph of the third clause. His will is as follows:

"I declare this to be my last and only will, made in order to make disposition of my estate.

"1st. I decree that all my just debts be paid.

"2nd. That the Waddy Christian Church to receive $500. Georgia Summers to receive $1,000, Anna Swan to receive $1,000. Aline Fortwengler to receive $1,000. Verna Robertson to receive $200. Herbert Clark to receive $100. Marshall Clark to receive $50. Edward Jennings to receive $50. Sarah Clark to re-

ceive $500. Dora Clark to receive $500. Roy Frye to receive $100.

"3rd. I appoint William H. Nash as administrator to serve under bond fixed by the court and to receive the customary fee for all settlements.

"Any funds left after the above bequest have been satisfied I decree that it be equally divided among the above heirs and not on a percentage basis. However, if the estate fails to pay out I decree that the shortage be settled on a percentage basis.

"4th. All household goods evenly divided between Georgia Summers, Anna Swan and Aline Fortwengler."

Considerable evidence was submitted to disclose the conditions surrounding the testator and the circumstances under which the will was prepared and executed; also evidence of his statements with respect to the disposition of his estate. The chancellor ruled the evidence tending to show his intention could not be considered, and construed the word "funds" to embrace all of the testator's personal estate but not his realty, and the word "heirs" as including only three of the devisees named in the second clause of the will who were his heirs at law. An appeal is prosecuted by all of the testator's heirs at law, who claim the entire estate as undevised except money on hand and a sufficiency of the proceeds of tangible personal property to make up the amount specifically devised. The three heirs named in the second clause also appeal, and insist that the will disposed of all the estate and that they are entitled to the residuary, both personal and real. The other devisees contend that the residuary was devised to all the persons named, the word "heirs" meaning "legatees."

Able argument is made by the heirs that there is a latent ambiguity and this Court should extend the rule of admissibility of extraneous evidence relating to the construction of wills and hold that declarations of the testator with respect to his property and the persons he intended to have it, including his instructions to the draftsman of his will, are competent. We have long regarded as competent extrinsic evidence to describe the conditions surrounding the testator that the court as an interpreter might place itself in his position in order the better to appreciate his situation and to discern his

intent as expressed by his language. Wheeler's Heirs v. Dunlap, 52 Ky. 291, 13 B. Mon. 291; Williams v. Williams, 182 Ky. 738, 207 S. W. 468; Thomas' Ex'r v. Marksbury, 249 Ky. 629, 61 S. W. 2d 282; Cummings v. Nunn, 290 Ky. 609, 162 S. W. 2d 213. We have also held acceptable evidence to identify the devisees or particular property where the language is obscure, or there is a latent ambiguity, such as where a description might apply to more than one person or one item of property. Eichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013; Cummings v. Nunn, supra. But in this case there is no latent ambiguity and no confusion as to identity of any devisee or particular property. What the testator meant by "funds" and "above heirs" presents patent but not latent ambiguities. Our jurisprudence has long refused to consider evidence of statements of a testator as an aid to ascertaining an intention not expressed, or one contrary to that which the language used reveals. Wheeler's Heirs v. Dunlap, 52 Ky. 291, 13 B. Mon. 291; Cochran v. Lee's Adm'r, 84 S. W. 337, 27 Ky. Law Rep. 64; Marquette v. Marquette's Ex'rs, 190 Ky. 182, 227 S. W. 157; Muth v. Goins, 199 Ky. 321, 250 S. W. 995. It can not be received for the purpose of enlarging or diminishing the estate or interest devised or to vary the legal effect of the language used in this respect. Long v. Duvall, 45 Ky. 219, 6 B. Mon. 219; McCauley v. Buckner, 87 Ky. 191, 8 S. W. 196; Martin v. Palmer, 193 Ky. 25, 234 S. W. 742. Testimony of the one who drew the will as to the testator's meaning of ambiguous words or of his intention can not be heard. Poore v. Poore, 226 Ky. 668, 11 S. W. 2d 721. This is so as to the meaning of the word "heir." Annotations, 94 A. L. R. 112. It is different concerning a latent ambiguity. Annotation, 94 A. L. R. 286. To hold otherwise would often, and in a large measure always, result in establishing an oral will. The wisdom of the rule of exclusion is exemplified in the present case. The rejected testimony when taken as a whole is contradictory and does not clearly manifest a purpose or intention of the testator prior to or in the preparation of his will that all of his heirs at law should have his entire estate, except what he specifically devised, or what he intended to include in the residuary provision.

We briefly state the situation which the acceptable evidence describes.

The testator was about 73 years old when his will was written in April, 1942, which was a few months after the death of his wife. He died 10 months later. He never had any children. He was survived by a brother and sister and numerous nephews and nieces, the children of five deceased brothers and sisters. Herbert Clark, Edward Jennings, and Roy Frye, named as specific legatees, were nephews and heirs. Verna Robertson was a niece, but her father was still living. Georgia Summers, Anna Swan, and Aline Fortwengler were half-nieces of his deceased wife. Marshall Clark, Sarah Clark and Dora Clark were friends who lived nearby. One or more of them had stayed with the testator and his wife at times and had always been considerate of them. The estate consists of personal property worth about $20,000 and a farm near Shelbyville, worth perhaps $15,000. When the will was written the testator had about $1300 in bank deposits, and when he died about $3800.

Mr. Jennings had little schooling, but was by no means illiterate. The will was prepared by his physician, Dr. Nash, who testified that the language of the instrument was dictated by the testator. The confusing language of the two paragraphs of the third clause was dictated in response to the doctor's inquiry after the preceding part had been written as to what he wanted done if his estate "does not pay out," or "if it is more"—the reference being to the specific bequests.

The argument of the heirs with respect to the meaning of the phrase "funds left after" the specific bequests and "above heirs" invokes the following rules of construction: (1) The presumption that testator did not intend to disinherit his heirs or next of kin, but did intend that it should pass to them in accordance with the statute of descent and distribution unless there is manifest intention to the contrary; (2) There can be no implication of disposition of property not expressly mentioned unless it is necessary, or unless the implication arising from the instrument is so strong that a contrary intention can not reasonably be supposed to have existed in the testator's mind; (3) Personal estate is the primary and only fund for the payment of legacies, unless the real estate is expressly charged therewith; (4) The testator is presumed to know the amount and character of his property, and in this instance he knew that

his personal estate was much more than enough to satisfy the specific bequests, which aggregated only $5000; (5) He did not give his executor power or direction over his real estate, which, in the absence of any reference to it, negatives the idea of a purpose to include it; (6) And where there is a conflict between the presumption against intestacy and the presumption against disinherison, the latter prevails. Some of these rules are referred to in Dodd v. Scott, 145 Ky. 310, 140 S. W. 528; Poore v. Poore, 226 Ky. 668, 11 S. W. 2d 721; Lane v. Railey, 280 Ky. 319, 133 S. W. 2d 74, and Ward v. Curry's Ex'r, 297 Ky. 420, 180 S. W. 2d 305.

It is conceded that the word "funds" has a variety of definitions, and the sense in which it is employed is to be gathered from the context of the instrument. 37 C. J. S., Fund or Funds, p. 1401; Burdine v. White, 173 Ky. 158, 190 S. W. 687. It is insisted that, when this will is regarded in the light of the presumptions, it manifests an intention to embrace only money, and a sufficiency of tangible personal property to satisfy the specific bequests; therefore, that the balance passes as intestate property.

It seems to us that these rules are not applicable and the deductions not sound. It is familiar law that a will is to be taken as a whole, and a comprehensive survey of all of it must be made. As often figuratively said, it is to be taken "by the four corners." If from such a consideration the intention of the testator can be ascertained from the face of the will, presumptions and other rules of interpretation need not and should not be used. Courts take liberties with language in order to effectuate intention. After all, words are used to convey ideas. The idea is primary and the means of expressing it secondary. It is no anomaly to regard words in a generic sense which have specific meaning, in the ordinary language of the street and to construe them to embrace a larger field so as to include property of a kind different from the specific classification.

This will starts out with the declaration that the testator was making it "in order to make disposition of my estate." This is reinforced by the fact that he referred to his "estate" failing to pay out when he came to consider whether he would leave enough property to satisfy the specific legacies. The word "estate,"

in the absence of any limitation by the context, means all property of any kind. Crawford v. Crawford, 290 Ky. 542, 162 S. W. 2d 4. Had he intended the limitation contended for by the heirs, he doubtless would have used a restrictive word such as "money" or "personal estate". To be sure the word "fund" or "funds" in common speech suggests money, and yet assets of an estate constitute a "fund" in the hands of an executor or administrator, and in wills, especially those prepared by laymen to the legal profession, it may be employed in such comprehensive sense, and, therefore, to include everything the testator leaves. Thus, under the peculiar language of the will as a whole, we held the word "fund" to include real estate. Kratz v. Slaughter's Ex'rs, 185 Ky. 256, 214 S. W. 878. Cf. Goldberg v. Home Missions of Presbyterian Church, 197 Ky. 724, 248 S. W. 219. Other courts have also held the word to include real estate. In re Arnolt's Estate, 127 Misc. 579, 217 N. Y. S. 323; Sims v. McMullan, Tex. Civ. App., 22 S. W. 2d 313. Jewett v. State, 94 Ind. 549. We recently held in Lane v. Railey, 280 Ky. 319, 133 S. W. 2d 74, that the word "cash" included not only money on hand but bank deposits, stocks and bonds and other intangible property which might be readily converted into cash. We had held some years before in Pohlman v. Pohlman, 150 Ky. 679, 150 S. W. 829, that the words "money I may have" included all evidences of debt owing the testator; and, as stated in Mutual Life Insurance Company v. Spohn, 172 Ky. 90, 188 S. W. 1078, the word "money" has been held to include the entire personal estate.

We think this testator regarded his entire estate as "funds," for in dealing with the excess over the specific bequests he referred to "funds left" in the singular. He wanted "it" equally divided. And in dealing with the deficiency he called it "the estate." He used the words synonymously. We can not say that he was so sure of having an estate ample to pay these specific bequests that he did not regard the possibility of leaving less. The previous decade had witnessed the loss of many fortunes. It is not unusual to find such provisions or references in wills, even where there was little likelihood of a deficiency.

We construe the will as having disposed of the testator's entire estate. This leads us to the interpreta-

tion of the phrase "above heirs" to whom the residuary was bequeathed. It is a more difficult problem.

Unless the context of the will, read in the light of the circumstances, indicates a different intention, "heirs" will be regarded in its technical or prima facie meaning and not secondary meaning of devisees or legatees. Kendrick v. Scott, 200 Ky. 202, 254 S. W. 422; Page on Wills, Secs. 1009, 1013.

As above disclosed, specific bequests were made to ten persons and a church. Four of the individuals were related to testator by consanguinity, but only three of them were heirs in the true or technical sense, the other one being a potential heir or an heir apparent. Three of the legatees were related to testator by affinity and, like the other three who were of no kin, were not his heirs. After having named his doctor as "administrator," he added a paragraph referring to the "above bequests"and to "Any funds left" as "it," directing that "it" (his residuary estate, as we regard it) be "equally divided among the *above heirs*." Emphasis added.

We bear in mind that this will was composed and written by laymen. It has been said that a will drawn by a layman must be construed as a layman would construe it. In re Tracy's Estate, 143 Misc. 800, 258 N. Y. S. 657. At least the court will regard the language of the will as used in its popular rather than in its technical meaning. Page on Wills, Secs. 921, 1009.

Laymen often loosely use legal phrases in drafting legal instruments without knowing their technical import, thus proving the adage that, "A little learning is a dangerous thing." They create ambiguity and confusion and thereby put it up to the legal profession to go back of the inapt terms and ascertain, if possible, what was really meant, or to translate the terms into simple, everyday language which the average person uses to express his purpose. Here, for example, the farmer-testator and the physician-scrivener used the word "decree" three times, and in no instance is it used correctly; but no one doubts it was in the sense of direct or devise or will. Then neither that word nor any other word of disposition is directly used in connection with the recitation as to the eleven specific bequests or the "Household Goods", yet no one doubts the intent. Of

course, "heirs" technically denotes and is to be construed as meaning those persons who take a decedent's estate by inheritance, according to the statute. Technically, one who takes under a will is not an heir, and more technically, the word "heir" is confined to those persons who take the real estate, those inheriting the personal property being "distributees." Higginbothom v. Higginbothom, 177 Ky. 271, 197 S. W. 627, L. R. A. 1918 A, 1105. And, except in a special and limited sense, a surviving wife or husband is not an heir, but sometimes when a will is construed in the light of the whole instrument, he or she is included in that category. Fidelity & Columbia Trust Co. v. Vogt, 199 Ky. 12, 250 S. W. 486. The same is true as to children of a living person. Arnold v. Simmons' Ex'r, 295 Ky. 516, 174 S. W. 2d 747. Therefore, in the construction of wills the word "heir" is given quite a liberal meaning for the purpose of effectuating the intention. It was long ago held that if it appears from the reading of the will in the light of the circumstances surrounding the testator, or of other expressions in the instrument, that he used the word other than in its technical or legal acceptation, the intention must prevail. Williamson v. Williamson, 57 Ky. 329, 18 B. Mon. 329. The scope and meaning of the word may be thereby expanded to include persons who are neither blood relations nor next of kin. Vandyke v. Vandyke, 223 Ky. 49, 2 S. W. 2d 1057.

This will is cluttered up with the wrong use of technical terms, but there is no difficulty in assigning to any of them the right or intended meaning and in arriving at testamentary intent, except the word "heirs." However, that does not stand alone. The residuary devise is limited to the "above heirs." The word "above" points to those named to whom he had given part of his estate and among whom the testator declared the surplus should be "equally divided." Regard must be had for the word "above" as used in this place as well as "above bequest," referring both to the beneficiaries and the subject matter. The testator provided that in case of a deficiency or "shortage" it should be "settled" on a percentage basis. Among whom? Logically, of course, the same legatees. We think it is clear that the testator intended the residuary should go to those whom he had named expressly and not to any other heirs.

This leads us to the question whether he intended

to restrict the bequests only to the three persons who were technically his heirs at law, i. e. those who would inherit it had he died intestate. What reason is there to suppose he knew or intended "heirs" to have a techical meaning when no other technical term had been correctly used? He had given the three persons less than any of the others expressly named, and the troublesome provisions in the will indicate he thought the total sum would be about all he would have when he died. We can not believe he intended all his heirs at law, of whom there were many, to come within the scope of his designation of the objects of his bounty. If he had, he would have said so. Nor can we believe he intended the balance, if any, to go exclusively to the three included among the parties specifically named, else he would have mentioned them by name. Cf. St. Louis Union Trust Co. v. Little, 320 Mo. 1058, 10 S. W. 2d 47; Note, 70 A. L. R. 586.

It is rare indeed that courts have identical wills to construe, although the same confusing words may be presented. As bearing on the construction of wills, in Muir v. Richardson, 201 Ky. 357, 256 S. W. 727, 730, we borrowed from an opinion of the United States Supreme Court (Home Tel. & Tel. Co. v. Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176) to say: "No case, unless it is identical in its facts, can serve as a controlling precedent for another, for differences, slight in themselves, may, through their relation with other facts, turn the balance one way or the other."

We may, however, examine some analogous cases.

In Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S. W. 221, 222, we had for determination the scope of the phrase "heirs named" in a will. James Guthrie had made specific bequests (or general legacies, technically speaking) to certain relatives, including a nephew whose father was still living. He then incorporated this provision in the third clause of his will: "Should there be a deficit in the amount given, each heir shall be reduced in amount equally and, if there should be a surplus in my estate, I wish the heirs named to share in the proportion as given in this will. If any of the beneficiaries of this will should die without children, I wish the parties named in this will to heir their portion as given in will pro rata."

Three codicils were afterward added. The estate had considerably increased in value between the date of the will and testator's death, and there was a large surplus. The question presented was whether the devisees or legatees named in the codicils were entitled to participate in the surplus residuary. The court held they were. Thus, the words "heirs named" were held to include some beneficiaries who were not "heirs" in the strict and technical sense.

And in Weir's Will, 39 Ky. 434, 9 Dana 434, we construed "heirs" as synonymous with "legatees"; and in Howell v. Ackerman, 89 Ky. 22, 11 S. W. 819, held the word embraced heirs apparent.

A number of cases with like expressions are brought together in the Annotation in 70 A. L. R. 581. In similar residuary dispositions to persons previously expressly named, it has been held that the word "heirs" was used in the sense of "legatees," although some of the persons bore no such relationship, either actually or potentially. Graham v. De Yampert, 106 Ala. 279, 17 So. 355; Moon v. Stewart, 87 Ohio St. 349, 101 N. E. 344, 45 L. R. A., N. S., 48, Ann. Cas. 1914A, 104; Hoke v. Jackman, 182 Ind. 536, 107 N. E. 65; Re Scott's Will, Sur., 204 N. Y. S. 478; Hoff's Appeal, 28 Pa. 51; Cook v. First Universalist Church, 23 R. I. 62, 49 A. 389; St. Louis Union Trust Co. v. Little, 320 Mo. 1058, 10 S. W. 2d 47; McKelvey v. McKelvey, 43 Ohio St. 213, 1 N. E. 594; Plummer v. Shepherd, 94 Md. 466, 51 A. 173. The special pertinence of the opinion in Re Hull's Will, 30 Misc. 281, 63 N. Y. S. 725, justifies this extensive quotation: "The testator makes a number of pecuniary gifts to various relatives of his own and of his deceased wife's blood. After creating certain specific legacies, the will, by the twentieth clause, directs the residuary estate 'to be divided on a percentage basis in proportion to the bequests of all heirs herein named in this will and testament.' The twenty-first clause provides for a proportionate 'money' abatement in the event of there being insufficient funds to pay all bequests, and the next clause contains a provision that, in the event of the estate exceeding the amount of the bequests, the balance remaining should be paid to 'all heirs herein named' proportionately. The question raised is whether the beneficiaries of the residuum are confined to such legatees as are heirs of the testator, or whether all of the legatees

should not participate therein. In testamentary construction the word 'heirs' is not always given its technical meaning. To the layman it may have, and, indeed, very. often has, an entirely different signification, and whatever that signification may be it should, if possible, be given effect. In seeking to ascertain the meaning in which the expression is used, the intention of the testator must be sought both from the context of the will and from the circumstances which surrounded the decedent. Armstrong v. Galusha, 43 App. Div. 248, 60 N. Y. S. 1. The application of this rule has resulted in the court holding that the word in question was used to designate next of kin (Lawton v. Corlies, 127 N. Y. 100, 27 N. E. 847); and it has also been held to denote legatees. 29 Am. & Eng. Enc. Law, 348. In the present case it appears that the will is holographic, that the testator was a layman, and, therefore, presumably ignorant of legal phraseology, and that the estate consists entirely of personal property. It would also seem that the decedent was on very affectionate terms with the relatives of his wife, who are the objects of his bounty. From a careful study of the context of the will in conjunction with these extrinsic facts, it is evident that the testator, in giving his residuary estate to the 'heirs' mentioned in the will, had in mind all the beneficiaries whom he had made recipients of gifts of money, and did not intend to discriminate against those who were related to his wife. The manner in which he provides for abatement among all of the legatees on the one hand and for the disposition of any excess among the 'heirs herein' on the other intensifies the conclusion that his testamentary scheme was to have all of the pecuniary legatees participate in the residue, and that the word 'heirs' was used merely in one of its popular senses, as meaning beneficiaries under a will.''

. In the case of Re Johnson's Will, 199 Wis. 154, 225 N. W. 818, 70 A. L. R. 575, and several cases treated in the annotation appended, similar phrases were construed otherwise, either as not including the specially named beneficiaries, or that only the actual heirs at law mentioned were entitled to the residuary. See also Jacobs v. Prescott, 102 Me. 63, 65 A. 761, and In re Allwood's Estate, 118 N. J. Eq. 172, 177 A. 861. In all those cases, however, the context was different from that of the other wills and from the will we have under consideration now;

nor were any of them so full of technical terms wrongly used. Each more clearly pointed the way to the construction which the court gave it.

It has also been held that similar terms do not include a charitable organization. But we think the Waddy Christian Church, expressly named in this will, was intended to be included. If testator had intended to exclude it, he would probably have said so specifically. But there is more than that deduction to support the conclusion. It could not be doubted that had there been a deficit, or less than $5,000 in the estate, the Church would have had its legacy reduced proportionately under the terms of the will. Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S. W. 221. So it must be said that it was included in the designation of "above heirs," since we think he meant "above legatees."

We are of opinion, therefore, that the right construction of the will should be that the residuary estate was devised or bequeathed to the ten individuals and the Waddy Christian Church, named in the first clause, to be divided per capita.

The judgment is reversed for consistent proceedings.

Since the construction of the will is a branch of the settlement of the estate, the executor will pay the costs.

Whole Court sitting.